**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

UNITED STATES OF AMERICA

        v.                           CR. No. 10-76-3-ML

JOHN A. ZAMBARANO              CR. No. 10-175-1-ML

### MEMORANDUM AND ORDER

MARY M. LISI, Chief District Judge.

Pending before the Court is John A. Zambarano's ("Zambarano") Motion to vacate, set aside or correct the sentences imposed on him after Zambarano pleaded guilty to, and was convicted of, (1) conspiracy, bribery, and extortion (CR. No. 10-76-3-ML, Docket # 173), and (2) conspiracy and insurance fraud (CR. No. 10-175-1-ML, Docket # 59). Zambarano, who is proceeding *pro se*, asserts this motion under 28 U.S.C. §2255. In his motion, Zambarano suggests that (1) his "mental illness rendered him incapable of knowingly and voluntarily entering a guilty plea and further rendered him non-competent to negotiate a plea or stand trial," Petitioner's Mem. 6 (Docket # 173-1); and (2) his defense counsel "rendered constitutionally ineffective assistance for failing to adequately investigate and present important mitigating evidence, specifically an evaluation report of [Zambarano's] mental health from Butler Hospital before negotiating a plea agreement in a criminal matter." Id. For the reasons that follow, Zambarano's motion is DENIED.

1

## I. Background and Travel

Zambarano's participation in a public corruption scheme while he served as a member of the North Providence Town Council has been described, in some detail, in <u>United States v. Ciresi</u>, 697 F.3d 19 (1st Cir. 2012)(denying the appeal of one of Zambarano's co-defendants who elected to proceed to a trial by jury and was convicted of bribery, extortion and conspiracy). Zambarano, Town Council members Raymond Douglas and Joseph Burchfield and two other individuals were indicted on August 19, 2010 for their participation in the scheme. On November 18, 2010, together with three different co-defendants, Zambarano was indicted for conspiracy and insurance fraud. Zambarano engaged the services of Thomas G. Briody ("Attorney Briody"), an experienced criminal defense attorney, to represent him in both cases.

Following plea negotiations, the government sent a proposed plea agreement to Attorney Briody. On February 17, 2011, Zambarano sought admission to a local psychiatric hospital. Zambarano met with his counsel on February 22, 2011, and executed the plea agreement. According to the government's representation, which is undisputed by Zambarano, Attorney Briody informed the Court of Zambarano's hospitalization at a pre-trial conference on February 23, 2011. Attorney Briody requested that the change of plea hearing be rescheduled for March 1, 2011, because Zambarano was scheduled to be discharged from the hospital on February 28, 2011. Attorney

Briody also stated that he would submit a physician's letter detailing Zambarano's medications and what effect those medications had on Zambarano.

On March 1, 2011, Zambarano appeared before this Court with Attorney Briody and pleaded guilty to all counts in both criminal cases. After Zambarano was sworn in, the Court advised Zambarano that he would be asked a series of questions to confirm his understanding of the proceedings and the consequences of entering a guilty plea. The Court also informed Zambarano that it was in receipt of a letter from one of Zambarano's treating physicians, Susan M. Kelly, M.D. ("Dr. Kelly"). The letter in question, in addition to listing Zambarano's medications, stated that Zambarano had been under the physician's care from February 17 to February 23, 2011 and included Dr. Kelly's opinion that none of these medications at these doses should impact Zambarano's ability to make decisions about legal or other matters. Upon questioning by the Court, Zambarano confirmed that he had taken the medications in the 48 hour period preceding the change of plea hearing. He stated that he was not having any difficulty understanding the Court and that he had a clear head. Tr. 4:21-5:8. Zambarano also confirmed that he had discussed the charges against him with Attorney Briody and that he was fully satisfied with the advice and representation he had received from Attorney Briody. Id. 5:17-6:1.

The Court then proceeded to question Zambarano in detail

regarding the provisions of the plea agreement he had executed, including his and the government's obligations thereunder, _id._ at 6:22-9:1, 10:21-11:17, as well as the mechanics of guideline sentence calculations, _id._ at 9:3-10:20, and the statutory maximum sentences that could be imposed on him, _id._ at 12:1-13:15. Zambarano was advised that he would not be allowed to withdraw his guilty plea if the Court imposed a higher sentence than any estimate provided to him by Attorney Briody. _Id._ at 17:9-17. The Court also noted that, pursuant to the plea agreement, Zambarano waived his right to appeal his sentence and conviction if the sentence was within or below the sentencing guideline range determined by the Court, to which Zambarano indicated his understanding. _Id._ 18:1-12. Zambarano confirmed that he pleaded guilty of his own free will because he was guilty, _id._ at 19:11-13, and that he understood the rights he was giving up by electing to forego a trial. _Id._ at 19:21-22:2.

The Court then asked the Assistant U.S. Attorney to summarize the evidence the government would present if the two cases were to proceed to trial and the Court advised Zambarano to listen carefully and indicate anything he wanted to correct. _Id._ at 22:3-14. Following the government's lengthy summation, _id._ at 22:17-43:6, Zambarano noted a single correction related to the reason behind a rescheduled Town Council meeting. _Id._ at 43:13-16. Apart from that correction, Zambarano admitted that all of the facts as set forth by the government were true. _Id._ at 44:17-20. After confirming that

4

he had no further questions, Zambarano pleaded guilty to all counts charged against him in both indictments. Id. at 45:2-9.

On May 11, 2011, Attorney Briody filed a motion for a sentence variance from the federal sentencing guidelines. The supporting memorandum (Docket # 104) stated that Zambarano had "enormous difficulty in dealing with the emotional strain associated with his arrest and indictment," Mem. at 7; that Zambarano had been hospitalized prior to his change of plea and had been diagnosed with major depressive disorder; and that he "suffer[ed] from flashbacks that pertain to his arrest." Id. The memorandum pointed out that, according to Zambarano's treatment provider, Zambarano's symptoms were "consistent with an individual tormented by deep feelings of guilt and shame." Id. The memorandum also noted that "[t]he anxiety and stress associated with this prosecution has led to two hospitalizations," id. at 10, and that Zambarano received "a battery of medications to stabilize his mental and physical health." Id. The memo also requested that Zambarano continue to receive appropriate medication and treatment during his incarceration. Id. at 10. In his acceptance statement submitted to the Court, Zambarano also referred to the hospitalization and medications to treat his anxiety. Zambarano acknowledged, however, that this was not an excuse and that he had no one to blame but himself.

At the May 17, 2011 sentencing hearing, Attorney Briody again referred to Zambarano's hospitalizations and the impact of the

criminal case on Zambarano's physical and mental health, but he conceded that this was not a reason for a variance. Sentencing Tr. 9:23-10:5. Zambarano then took the opportunity to apologize to the Court, his family, and the people who had elected and trusted in him for 14 years. Id. at 12:8-10. Zambarano also stated that he was ready to accept his punishment and that he hoped to make amends for the harm he had caused. Id. at 12:11-13. Zambarano was sentenced to 60 months of imprisonment on Counts I and XII of the corruption case and Count I of the insurance fraud case, as well as 71 months of imprisonment on Counts II, IV, V, VII, X, and XI of the corruption case and on Counts II through V of the insurance fraud case, all terms to run concurrently with one another. As to all counts, the Court imposed a term of supervised release for a period of three years. Id. at 16:1-9. The Court also ordered that the Bureau of Prisons be provided with Zambarano's medical and mental health treatment information so that his particular needs could be addressed. Id. at 17:1-5.

**II. Standard of Review**

A. Collateral Challenge to Plea of Guilty

The United States Supreme Court has "strictly limited the circumstances under which a guilty plea may be attacked on collateral review." Bousley v. United States, 523 U.S. 614, 621, 118 S.Ct. 1604, 1610, 140 L.Ed.2d 828 (1998). "'It is well settled that a voluntary and intelligent plea of guilty made by an accused

person, who has been advised by competent counsel, may not be collaterally attacked.'" <u>Bousley</u>, 523 U.S. at 621, 118 S.Ct. at 1610 (quoting <u>Mabry v. Johnson</u>, 467 U.S. 504, 508, 104 S.Ct. 2543, 2546-2547, 81 L.Ed.2d 437 (1984)).

Moreover, "even the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review. Habeas review is an extraordinary remedy and 'will not be allowed to do service for an appeal.'" <u>Bousley</u>, 523 U.S. at 621 (quoting <u>Reed v. Farley</u>, 512 U.S. 339, 354, 114 S.Ct. 2291, 2300, 129 L.Ed.2d 277 (1994)(citation omitted)). Therefore, "under ordinary circumstances, the voluntariness of a guilty plea can be questioned on collateral review under 28 U.S.C. § 2255 only if, and to the extent that, the plea has been challenged on direct appeal." <u>Oakes v. United States</u>, 400 F.3d 92, 95 (1st Cir. 2005)(citing <u>Bousley</u>, 523 U.S. at 614)). However, " a procedural default is not necessarily a total bar to federal habeas relief." <u>Oakes v. United States</u>, 400 F.3d at 95.

A petitioner may bring a federal habeas petition "if the petitioner can show either (i) that there is cause for the default and actual prejudice resulting from it, or (ii) that he is actually innocent of the offense of conviction." <u>Id.</u> (citing <u>Bousley</u> at 622-23, 118 S.Ct. 1604; <u>Derman v. United States</u>, 298 F.3d 34, 45 (1st Cir.2002)); <u>Sustache-Rivera v. United States</u>, 221 F.3d 8, 17 (1st Cir. 2000) ("We know from *Bousley* that a first §2255 petition

must meet the cause and prejudice standard if it presents a claim not made earlier. See Bousley, 523 U.S. at 622, 118 S.Ct. 1604."). "[W]hen the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary." United States v. Broce, 488 U.S. 563, 569, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989).

B. Ineffective Assistance of Counsel

Criminal defendants have a right to "reasonably effective" legal assistance. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "A defendant claiming ineffective assistance of counsel must show that (1) counsel's representation 'fell below an objective standard of reasonableness,' and (2) counsel's deficient performance prejudiced the defendant." Roe v. Flores-Ortega, 528 U.S. 470, 476-477, 120 S.Ct. 1029, 1034, 145 L.Ed.2d 985 (2000)(quoting Strickland, 466 U.S. at 688, 694, 104 S.Ct. 2052)).

"To satisfy the deficient-performance prong, the defendant 'must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment,' and the court then determines whether, in the particular context, the identified conduct or inaction was 'outside the wide range of professionally competent assistance.'" United States v. Manon, 608 F.3d 126, 131 (1st Cir.2010) (quoting Strickland, 466 U.S. at 690,

104 S.Ct. 2052)).

In order to meet the prejudice requirement under <u>Strickland</u>, a defendant who has pleaded guilty must show "a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial," <u>Hill v. Lockhart</u>, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985), or that his sentence would have been less severe, <u>see</u> <u>Peralta v. United States</u>, 597 F.3d 74, 79 (1st Cir.2010).

### III. Discussion

A. Voluntary and Intelligent Plea

In this case, Zambarano did not seek to vacate his plea prior to sentencing; Zambarano was also precluded from filing an appeal of his conviction and/or sentencing by the terms of his plea agreement. Zambarano now blankly asserts that "mental illness rendered him incapable of knowingly and voluntarily entering a guilty plea and further rendered him non-competent to negotiate a plea or stand trial." Petitioner's Mem. at 6. There is nothing in the record to support Zambarano's contention. The Court had been made aware of Zambarano's hospitalization and the medications he was taking. The Court was also in receipt of Dr. Kelly's memo that listed the medications and in which Dr. Kelly opined that the medications did not affect Zambarano's ability to make decisions. At the change of plea hearing, the Court specifically questioned Zambarano whether he had any difficulty understanding the Court,

which Zambarano denied, and whether he had a clear head, which Zambarano affirmed. Zambarano answered all questions posed to him by the Court and again confirmed his understanding of the nature of the proceeding and his role in it. Zambarano then listened to a lengthy and detailed summation of the evidence against him, at the conclusion of which Zambarano made a specific correction to the facts as they had just been presented. Having admitted his involvement in the charged offenses and indicating that he had no further questions, Zambarano pleaded guilty.

Prior to sentencing, Zambarano submitted an acceptance statement in which he described the stress he was under as a result of the cases brought against him, but he acknowledged that this was not an excuse and that he had no one to blame but himself. At the sentencing hearing, Zambarano addressed the Court, expressed regrets at his actions, and stated that he was ready to accept his punishment and that he hoped to make amends for the harm he had caused.

Zambarano contends, and his submitted medical records suggest, that he was suffering from significant anxiety as a result of his legal difficulties. However, Zambarano never actually asserts that his mental health issues rendered him incapable of understanding the proceedings in which he participated or that his admissions to the offenses with which he was charged were not made of his own free will. Nothing in the record demonstrates that Zambarano was confused

at the change of plea hearing, that he failed to understand the nature of the proceedings, or that he was so distraught that his participation therein was not meaningful.

Likewise, the medical records Zambarano submitted in support of his motion do not suggest that Zambarano was "incompetent" to change his plea. In essence, the records reveal that Zambarano was anxious and depressed about his legal difficulties, but that his mental state was managed with medication and that he made some improvement over time. Zambarano himself requested a letter documenting his competence so his plea would be accepted and Dr. Kelly confirmed that Zambarano's medication would not impact his ability to make decisions about legal or other matters.

In sum, Zambarano makes no specific claims regarding how his mental health problems precluded him from making a knowing and voluntary plea and there is nothing in the submitted medical records or in the records of this case to indicate that he was incompetent when he entered his guilty plea or that his plea was not voluntary and intelligent.

B. Ineffective Assistance of Counsel

Zambarano claims that his counsel was ineffective because Attorney Briody failed to (1) investigate and present mitigating evidence, particularly an "evaluation report"[1] from the mental

---

[1]

It is unclear to what specific report Zambarano is referring. Zambarano submitted a number of medical records (a) from his initial hospitalization prior to signing the plea agreement and

11

health facility where Zambarano was admitted before entering his change of plea; (2) move for a downward departure based on Zambarano's mental health issues; and (3) secure a safety-valve proffer for Zambarano's "truthful information provided to federal authorities." Petitioner's Mem. at 6.

With respect to Zambarano's first assertion, nothing in the submitted documentation indicates that Zambarano was incompetent when he signed the plea agreement or entered his plea of guilty. The letter issued by Zambarano's treating physician Dr. Kelly, on the day before Zambarano entered his plea notes that Zambarano was treated with medications for depression, anxiety, and sleep and that none of these medications at these doses should impact his ability to make decisions about legal or other matters. Likewise, the submitted medical records indicate that Zambarano's mood and anxiety had become more manageable by the time he signed the plea agreement and before entering his guilty plea. According to the medical records submitted by Zambarano in support of his motion, Zambarano himself requested a letter documenting his competence because he was concerned that his plea would not be accepted and that he would be in the newspapers again. Nothing in the records indicates that Zambarano's competency was affected by the anxieties he was experiencing.

---

entering his change of plea and (b) related to subsequent mental health treatment Zambarano received.

Regarding Zambarano's suggestion that Attorney Briody failed to use Zambarano's mental health status to request a downward departure, the government correctly points out that such an adjustment was not available to Zambarano. Pursuant to Section 5K2.13 of the United States Sentencing Guidelines, "[a] downward departure may be warranted if (1) <u>the defendant committed the offense while suffering</u> from a significantly reduced mental capacity; and (2) the significantly reduced mental capacity contributed substantially to the commission of the offense." U.S.S.G. §5K2.13 (emphasis added). Nowhere in his submissions does Zambarano allege that he was suffering from reduced mental capacity <u>while committing</u> the offenses to which he pleaded guilty, nor is there any suggestion of such impairment in the record. Attorney Briody appropriately made reference to Zambarano's mental state in his sentencing memorandum and in his sentencing argument; a motion requesting a downward departure on those grounds would have been both futile and improper.

Finally, Zambarano's suggestion that Attorney Briody failed to obtain a safety-valve proffer is equally ill-conceived. The safety valve provision, 18 U.S.C. §3553(f), was enacted by Congress to "mitigate the harsh effect of mandatory minimum sentences on certain first offenders who played supporting roles in drug-trafficking schemes." <u>United States v. Marquez</u>, 280 F.3d 19, 22 (1st Cir. 2002). As such, the provision is entirely inapplicable in Zambarano's case.

Moreover, the safety valve provision applies only if "not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan...." U.S.S.G. §5C1.2(a)(5). As the government correctly points out, however, Zambarano acknowledged with his guilty plea that he had made false statements to the FBI regarding other offenses for which he had been charged and to which he also pleaded guilty. Superseding Indictment ¶ 12 (Docket # 23 at 74). In other words, the safety valve provision did not apply to Zambarano's offenses and Zambarano would not have qualified thereunder; therefore, Attorney Briody cannot be faulted for failing to pursue a legal impossibility.

## Conclusion

For the reasons stated herein, Zambarano's motion under 28 U.S.C. §2255 to vacate, set aside, or correct sentence is DENIED.

## Ruling on Certificate of Appealability

Pursuant to Rule 11(a) of the Rules Governing §2255 Proceedings in the United States District Courts, this Court hereby finds that this case is <u>not</u> appropriate for the issuance of a certificate of appealability because Zambarano has failed to make a substantial showing of the denial of a constitutional right as to any claim, as required by 28 U.S.C. §2253(c)(2).

Zambarano is advised that any motion to reconsider this ruling will not extend the time to file a notice of appeal in this matter. <u>See</u> §2255 Rule 11(a).


SO ORDERED.

<u>/s/ Mary M. Lisi</u>

Mary M. Lisi

Chief United States District Judge


May 30, 2013